Whaley, Judge,
delivered the opinion of the court:
Pursuant to competitive bidding the plaintiff entered into a contract with the defendant on June 25, 1929, for the construction of a reinforced concrete culvert along the Rio Corundu River at the Albrook Flying Field in the Panama Canal Zone. The contract provided that the plaintiff furnish all labor and material and perform all work in the construction of the concrete culvert for the lump sum price of $178,000. The culvert was to be 1,918 feet in length and constructed in accordance with the specifications, schedules, and drawings which were made a part of the contract.
This suit is brought to recover upon five different items, three of which involve extra work and two involve the supplying of material which plaintiff claims was not called for under the contract and for which he should receive extra compensation under the terms of the contract.
*560 EXTRA PILES
The first claim is for the retention by the Government of 174 piles which remained at the site of the work after the completion of the piling required under the contract. It appears that in preparing for the performance of the contract the plaintiff had shipped to the site along with other material 1,230 piles. It was found that this number of piles was not necessary for the completion of the piling section of the contract and there were 174 piles left over after all the piles had been driven which were necessary. The plaintiff requested permission to remove these piles. The Government officer in charge of the work refused to allow the piles to be removed and claimed that these piles belonged to the Government under the terms of the contract. The plaintiff protested. After sixteen months the Comptroller General ruled that the piles belonged to the plaintiff. The Government offered to deliver the piles to the plaintiff but the offer was declined owing to the fact that the piles had deteriorated during this period to such an extent that they were valueless.
It is too obvious for argument that, where there is a lump-sum contract for the construction of a given project, any material required for this work and left over after the work is completed belongs to the contractor, and when the Government under such circumstances claims under the contract the ownership of the property so left over, and after a long period of time admits it has no right to the property under the contract, the plaintiff is entitled to the damages suffered by the act of the Government in retaining the property. United States v. Smith, 94 U. S. 214.
The evidence shows that the value of these piles was $1,661.70 at the time the Government refused to allow plaintiff to remove them. When permission was given for their removal by the plaintiff the piles were valueless. The plaintiff is entitled to recover the sum of $1,661.70.
SPLICING OF PILES
The specifications provided that the piles required under the contract were based on a length of 40 feet and should be *561 driven to a good refusal where the penetration is less than 20 feet and where the penetration is more than 20 feet, the piles should be driven to satisfy a bearing value of 20 tons. During the performance of this part of the contract it was found that some of the piles would not produce the required bearing strength at 40 feet. When this was called to the attention of the officers in charge, a change order was given to the plaintiff for a lump sum to make tests to determine the approximate depth and length of the piles necessary to reach the bearing strength. The contracting officer decided that a greater depth than 40 feet for the driving of the piles was not within the terms of the contract and that the plaintiff was entitled to receive compensation for the additional work and material required in driving the piles to a greater depth than 40 feet. The plaintiff submitted estimates to the contracting officer who decided to issue a change order allowing the plaintiff $6.00 per pile as increased compensation for the furnishing of labor, material, and equipment incident to the splicing and the driving of the piles “exceeding 40 feet in length”, and also allowed the plaintiff ten days additional time in which to complete the contract. Plaintiff requested a rehearing and submitted a request for additional compensation above that fixed by the contracting officer in his change order and the contracting officer agreed to recommend increases if the plaintiff could show the actual cost including a reasonable overhead and profit exceeding the amount fixed in the change order. No appeal was taken by the plaintiff to the head of the Department from the decision of the contracting officer.
Article 3 of the contract provides for changes and Article 5 provides that no charge for extra work or material is to be allowed unless ordered in writing by the contracting officer and the price stated in such order. Article 15 provides that all disputes concerning questions of fact arising under the contract were to be decided by the contracting officer subject to written appeal to the head of the Department and the decision of the head of the Department was to be final and conclusive as to questions of fact. No appeal was taken by the contractor from the change order issued by the contracting officer to the head of the Department.
*562 The contracting officer having construed the contract and specifications not to include this extra piling which involved splicing, and having issued a change order under the terms of the contract as to the extra piling, the plaintiff is entitled to recover for 158 piles, which were spliced and di’iven, at the rate of $6.00 a pile or the sum of $918.00.
EXTRA EXCAVATION
The claim for extra excavation is properly divisible into three parts.
(a) The drawings upon which the plaintiff was invited to make a 'bid called for the excavation of approximately 2,933 cubic yards. During the progress of the work it was discovered that certain errors had been made by the defendant in the computations as set out in the drawings and when these errors were corrected the yardage of excavation was greatly increased over that on which the bids were invited. The defendant admits these errors and the only difference between the parties is the amount of the extra excavation and the price to be paid per cubic yard. The evidence establishes, and the commissioner who took the evidence has found, that the plaintiff was required and did excavate 605 cubic yards due to these errors and the reasonable value of the work so performed is $6.50 per cubic yard. The greater weight of the evidence establishes these figures. The plaintiff is entitled to recover $3,932.50 for performing this extra work.
(5) During the performance of the work the plaintiff requested permission to make a change in the alignment of the culvert and the defendant granted the change on the express condition that no payment would be made for any additional excavation which might result from such a change and no extension of time for the completion of the contract would be given. The change of alignment did require extra excavation and the plaintiff claims extra compensation. No argument is necessary to show that plaintiff is not entitled to recover on this claim.
(c) Previous to the time when the plaintiff entered into the contract and during the performance of the work there *563 under, the Dredging Division of the Panama Canal was making for the War Department a hydraulic fill on the land adjacent to the site of the concrete culvert involved in this suit. Between the fill and the site of the culvert, dykes had been constructed for the purpose of retaining the material which was dumped 'by the hydraulic dredge on to the land to be filled. Spillways had been opened through the dykes to permit the water to pass from the fill into Corundu River. These openings were at the lower end of the plaintiff’s operations and did not empty into the section where the culvert was to be constructed. After plaintiff had commenced his operations in the construction of the culvert, additional openings, were made by those in charge of the Dredging Division of the Panama Canal which permitted water to flow on and into the operations carried on by plaintiff and, when the fill was nearing completion, water overflowed the dykes passing onto and through the operations of plaintiff. This water contained silt which remained upon the site where the plaintiff was constructing the culvert and resulted in the plaintiff having to excavate additional material. A section of the dyke also broke and caused a substantial quantity of silt to be deposited on the lower end of plaintiff’s operations. As a result of the openings, the overflowing of the dykes, and the breaking of the dykes, the plaintiff had deposited upon his work 490 cubic yards of material, which was not contemplated or considered when he entered into the contract, and which was brought upon his operations through the actions and as a result of the filling in of the additional area by the hydraulic dredge under the operation and control of the Dredging Division of the Panama Canal.
The plaintiff makes a claim for this additional excavation which he had to perform. The defendant contends that the Dredging Division of the Panama Canal was under contract with the War Department. The Panama Canal is owned by the United States and controlled by the War Department, and the War Department is an arm of the defendant. The operation of the Dredging Division of the Panama Canal was the work of the War Department, and as *564 the War Department is responsible, the defendant is liable for damages for any injury occasioned to the plaintiff. The evidence shows, and the commissioner has found as a fact, that the additional excavation, as a result of the work of the Dredging Division, amounted to 490 cubic yards and the reasonable cost of the work in removing this material was $6.50 per cubic yard, or the sum of $3,185.00. The plaintiff is entitled to recover this amount.
RTJN-OE-BANK GRAVEL
The plaintiff claims that under the specifications he was permitted to use Chagres River run-of-bank gravel in the concrete mixture to be used on all parts of the structure. He alleges that when he attempted to use the Chagres River run-of-bank gravel the contracting officer required that it be screened to a size not exceeding D/4", and this requirement imposed upon him an extra cost of $826.
The specifications required in Section 3, Subdivision 6, “that the proportions of concrete mixture to be used in all parts of the structures shown on the plans, shall be any proportion of aggregate and cement that will obtain a concrete having a compression strength of 2,000 pounds in twenty-eight (28) days.” In Section 3-1 the kind of cement to be used is provided for. Section 3-2 provides for fine aggregate. Section 3-3 provides for coarse aggregate and when this aggregate is used it is provided that the maximum size should not exceed Section 3-4 permitted the use of Chagres River run-of-bank gravel.
The concrete material was to be composed of cement and aggregate. There were only two aggregates provided for, the fine and the coarse. When permission to use the Chagres River run-of-bank gravel was added, it is quite plain that it meant that this bank gravel should measure up to one of the two grades of aggregate mentioned above, which with the cement, made the concrete. The contracting officer required that it should measure up to the coarse item, and under the terms of the contract and the specifications, the contractor was required to furnish aggregate which would not exceed in size
*565 In our opinion there cannot be any recovery on this item, as it was plainly within the terms of the contract and specifications.
CEMENT
The plaintiff claims an additional cost caused by the use of Belgian and American cement over the cost that would have been incurred had he been permitted to use Norwegian cement.
In his bid plaintiff made no reference to the use of a foreign cement. Subsequent to his bid he wrote a letter requesting the use of a foreign cement and the contracting officer agreed to permit him to use Belgian cement and also American cement. Plaintiff’s claim is based solely on the letter written after the bid had been submitted and has no basis under the terms of the contract.
Section 19 of the contract provided with reference to domestic and foreign materials:
Preference for domestic articles or materials. — Preference will be given to articles or materials of domestic production, conditions of quality and price, including duty, being equal. Unless otherwise stated in the bid, it will be understood that domestic articles or materials only will be used, and the use of foreign articles or materials will not be permitted unless (1) they are of better quality, or (2) being equal in quality will be furnished at lower cost to the Government, or (3) domestic articles or materials are not available. The term “domestic articles or materials” in this connection means articles or materials manufactured or assembled in the United States or its possessions.
Article T of the contract provides:
* * * Where equipment, materials, or articles are referred to in the specifications as “equal to” any particular standard, the contracting officer shall decide the question of equality. * * *
The contractor requested permission to use Norwegian cement. The contracting officer decided that the cement did not equal in standard either the American or Belgian cement and therefore he declined to permit the use of Norwegian cement. However, he did decide that the use of Belgian *566 cement was equal to or better in quality than the American cement and therefore the contractor could use either or both. Plaintiff used both. The decision rested with the contracting officer and there was nothing in the contract which permitted the use of any foreign cement other than that permitted by the contracting officer under the terms of the contract.
There can be no recovery under this item.
The plaintiff is entitled to a judgment in the sum of $9,377.20, including the following items:
Value of 174 piles_$1, 661. 70
Driving and splicing 153 piles at $6.00 per pile- 918. 00
Extra material excavated_ 7,117. 50
Total_ 9, 697. 20
Less cheek received for extra excavation_ 320.00
$9', 377. 20
It is so ordered.
Williams, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.